**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **SERGIO VELAZQUEZ CORNERO,**<br><br>***Petitioner*****,**<br>**v.**<br><br>**DAVID J. VENTURELLA,** *in his official capacity as* Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; *and* **MARKWAYNE MULLIN,** *in his official capacity as* Secretary, U.S. Department of Homeland Security,<br><br>***Respondents*****.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **EP-26-CV-01366-DCG** |

## ORDER GRANTING PETITION

Petitioner Sergio Velazquez Cornero ("Petitioner") challenges his immigration detention while the Government facilitates his removal from the United States.[1] Among other things, Petitioner argues that the amount of time he's spent in detention—coupled with uncertainty regarding when (or whether) he'll be removed from the country—requires his release.[2] Respondents, however, insist that Petitioner's continued detention is a product of Petitioner's refusal to comply with removal.[3]

For the following reasons, the Court **GRANTS** the Petition and **ORDERS** Respondents to release Petitioner from custody.

---

[1] *See generally* Pet., ECF No. 3.

[2] *See generally id.*

[3] *See, e.g.*, Resp'ts' Status Report, ECF No. 33.

## I. INTRODUCTION

Petitioner is a Cuban citizen who entered the United States seeking political asylum in 1991.[4] Decades later, on May 31, 2017, an Immigration Judge ("IJ") ordered Petitioner removed from the United States.[5] The Government, however, couldn't repatriate Petitioner to Cuba at that time, so it released Petitioner under an order of supervision.[6]

Over eight years later, on November 4, 2025, the Government revoked Petitioner's supervised release and took him back into custody.[7] Since re-detaining him, the Government has attempted to remove Petitioner to Cuba and (alternatively) Mexico. Those attempts, however, have proven unsuccessful because:

(1) Cuba again denied Petitioner repatriation;[8] and

(2) Petitioner has refused removal to Mexico,[9] and "[o]fficials from the Government of Mexico have stated they will not accept a third-country national who does not consent to removal to Mexico."[10]

Although the Government "has reviewed the possibility of removal to a third country [other than Mexico]," "no viable third country option has been identified or accepted for Petitioner."[11]

---

[4] *See* Pet. at 9 (indicating that Petitioner is "a Cuban citizen").

[5] *See* Marin Decl., ECF No. 33-1, at 2.

[6] *See* Pet. at 9.

[7] *See id.*

[8] Marin Decl. at 2

[9] *See id*. at 1–2.

[10] *See* Lopez Decl., ECF No. 27-1, at 2.

[11] Marin Decl. at 2.

Ordinarily, post-removal-order detention cases turn on whether an alien's removal is reasonably foreseeable—in which case 8 U.S.C. § 1231(a)(6) authorizes detention.[12] Here, the Government concedes that it doesn't currently have a viable option for Petitioner's removal,[13] which makes for straightforward determinations that:

(1) removal is not reasonably foreseeable; and (thus)

(2) detention is not authorized by 8 U.S.C. § 1231(a)(6).[14]

The complicating factor here is Petitioner's refusal to comply with removal to Mexico. In some instances, 8 U.S.C. § 1231(a)(1)(C) authorizes the Government to detain aliens who fail to comply with removal orders.[15] Petitioner, however, argues that his refusal to comply stems from the Government's failure to give him "a meaningful opportunity" to seek withholding of removal[16]—which, as this Court has previously explained, is a mandatory step before the Government removes an alien to a third country.[17] Based on those concerns, Petitioner moved for—and the Court granted—an injunction prohibiting the Government from removing him to Mexico without providing such an opportunity.[18]

---

[12] *See, e.g.*, *Khoury v. Garite*, No. EP-25-CV-00577-DCG, 2026 WL 1179822 (W.D. Tex. Apr. 21, 2026).

[13] *See supra* notes 8–11 and accompanying text.

[14] *See infra* Section II.B.2.

[15] *See infra* Section II.B.3.

[16] *See* TRO Mot., ECF No. 21, at 5.

[17] *See, e.g.*, *Pablo Pablo v. Venturella*, No. 3:26-CV-00566, 2026 WL 2078922 at *4–5 (W.D. Tex. July 17, 2026).

[18] *See generally* TRO Mot.; Order Granting Preliminary Injunction, ECF No. 28.

That raises a question: Does 8 U.S.C. § 1231(a)(1)(C) authorize detention where an alien demands procedural protections to which he is entitled? As the Court will now explain, the answer to that question is "No." Because Petitioner was entitled to the protections he sought, 8 U.S.C. § 1231(a)(1)(C) doesn't authorize his detention. And because his removal is not reasonably foreseeable, neither does 8 U.S.C. § 1231(a)(6). The Government must release him.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241, a person in immigration detention can challenge detention as unlawful by filing a petition for a writ of habeas corpus.[19] To prevail, the petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[20]

### B. Relevant Authorities

#### 1. 8 U.S.C. § 1231(a)(6)

8 U.S.C. § 1231(a) governs detention of aliens who are ordered removed from the country.[21] Once a removal order becomes final, Section 1231(a)(1) provides the Government

---

[19] 28 U.S.C. § 2241(c); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) (citing 28 U.S.C. § 2241(c)(3)).

[20] *See* 28 U.S.C. § 2241(c); *see also, e.g.*, *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

[21] *Zadvydas*, 533 U.S. at 682.

ninety days to secure removal. This is known as the "removal period," during which detention is mandatory under the statute's plain text.[22]

As this case illustrates, though, not all aliens are removed during the removal period. Once the ninety-day removal period expires, Section 1231(a)(6) authorizes the Government to continue detaining specified classes of aliens, including aliens like Petitioner:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, ***may be detained beyond the removal period*** and, if released, shall be subject to . . . terms of supervision . . . .[23]

Notably, Section 1231(a)(6) doesn't expressly impose temporal limits on the Government's detention authority.[24]

### 2. *Zadvydas v. Davis*

That doesn't mean that the Government's Section 1231(a)(6) detention authority is unlimited, though. In *Zadvydas v. Davis*, the Supreme Court considered whether Section 1231(a)(6) gives the Government unfettered discretion to decide whether and how long to continue detention.[25] There, the Government continued detaining two aliens past the removal

---

[22] *See* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General ***shall*** detain the alien." (emphasis added)); *see also Zadvydas*, 533 U.S. at 683 ("After entry of a final removal order and during the 90–day removal period, however, aliens must be held in custody . . . .").

[23] *See* 8 U.S.C. § 1231(a)(6) (emphasis added).

*See also* Notice to Appear, ECF No. 19-1, at 3 (indicating that Petitioner was determined removable under Section 237(a)(2)—*i.e.*, Section 1237(a)(2)).

[24] *See supra* note 23 and accompanying text.

[25] *Zadvydas*, 533 U.S. 678.

period due to their criminal histories.[26] The Government, however, hadn't been able to find a country willing to accept either of them, which resulted in their prolonged detentions without a foreseeable end in sight.[27]

Although the Supreme Court acknowledged that Section 1231(a)(6) doesn't expressly limit the duration of detention, it nonetheless construed the statute to contain implicit limits.[28] Specifically, the Supreme Court "detected ambiguity in the statutory phrase 'may be detained,'" concluding that "while 'may' suggests discretion, it does not necessarily mean unlimited discretion."[29] The Supreme Court further reasoned that "if Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms."[30]

After determining that Section 1231(a)(6) is ambiguous, the Supreme Court weighed competing interpretations of Section 1231(a)(6)'s detention authority. The Government's interpretation would have authorized indefinite detention[31]—which, according to the Supreme

---

[26] *See id*. at 684–86.

[27] *See id.*

[28] *See id*. at 682.

*Cf. Miller v. French*, 530 U.S. 327, 336 (2000) ("[W]here Congress has made its intent clear, 'we must give effect to that intent.'" (quoting *Sinclair Refin. Co. v. Atkinson,* 370 U.S. 195, 215 (1962))).

[29] *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (citing *Zadvydas*, 533 U.S. at 697).

[30] *Zadvydas*, 533 U.S. at 697.

[31] *Id.* at 692.

Court, would raise a "serious constitutional problem."[32] As the Supreme Court had previously explained, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."[33] Applied to Section 1231(a)(6):

(1) the statute's "basic purpose" is to "assur[e] the alien's presence at the moment of removal"; and

(2) if it's unlikely that the Government will be able to remove an alien within the foreseeable future, detaining that alien under Section 1231(a)(6) wouldn't serve that purpose; so

(3) interpreting Section 1231(a)(6) to authorize the Government to detain aliens whose removals aren't foreseeable would raise serious constitutional questions.[34]

To avoid those constitutional questions, the Supreme Court construed Section 1231(a)(6) to limit detention to a "reasonable time."[35] As for what constitutes a "reasonable time," the Supreme Court determined that detention is "presumptively reasonable" for six months.[36] After that 6–month period, "if the alien 'provides good reason to believe that there is no significant

---

[32] *Id*. at 690.

*See also Jennings*, 583 U.S. at 296 ("When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932))).

[33] *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."); *see also Zadvydas*, 533 U.S. at 690 (citing *Jackson*, 406 U.S. at 738).

[34] *Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").

[35] *Id.* at 689.

[36] *Id*. at 701.

likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien."[37]

**3. 8 U.S.C. § 1231(a)(1)(C)**

A final authority to consider for the purposes of this Order is 8 U.S.C. § 1231(a)(1)(C), which authorizes post-removal-period detention where an alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."[38] To invoke Section 1231(a)(1)(C), implementing regulations require the Government to "serve the alien with a Notice of Failure to Comply" that advises the alien of:

(1) "the provisions of [Section 1231(a)(1)(C)]";

(2) the penalties associated with an alien's failure to comply with removal;

(3) "the circumstances demonstrating [the alien's] failure to comply with the requirements of Section 1231(a)(1)(C)"; and

(4) "an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements."[39]

---

[37] *Jennings*, 583 U.S. at 296 (quoting *Zadvydas*, 533 U.S. at 701); *see also Zadvydas*, 533 U.S. at 699 ("Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

[38] 8 U.S.C. § 1231(a)(1)(C).

[39] 8 C.F.R. § 241.4(g)(5)(ii); *see also Alexander v. Att'y Gen. U.S.*, 495 F. App'x 274, 277 (3d Cir. 2012) (observing that "8 C.F.R. § 241.4(g)(5) addresses an alien's failure to comply with aspects of the removal process").

*See also Glushchenko v. DHS*, 566 F. Supp. 3d 693, 708 (W.D. Tex. 2021) ("[W]hen DHS determines that removal needs to be extended under § 1231(a)(1)(C), it is required to serve the alien with a Notice of Failure to Comply that explains the relevant statutes and provides an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements." (citation modified)).

Some courts have concluded that "*Zadvydas*'s burden-shifting analysis is not necessary in a case where a[n] [alien] acts to thwart his removal by refusing to cooperate."[40] Others have considered an alien's failure to cooperate while conducting *Zadvydas*'s burden-shifting analysis.[41] Either way, though, courts generally agree that "the due process concerns that motivated the Supreme Court in *Zadvydas* do not apply when an alien may have the keys to freedom in his pocket."[42]

### C. Analysis

#### 1. Petitioner has not "acted to prevent his removal" within the meaning of 8 U.S.C. § 1231(a)(1)(C)

For the purposes of this Order, the Court will consider Petitioner's purported failure to comply with removal before undertaking *Zadvydas*'s burden-shifting analysis. Although they don't expressly state it, Respondents impliedly invoke Section 1231(a)(1)(C) where they argue that Petitioner's refusal to accept removal to Mexico is the reason he remains in detention.[43]

---

[40] *See, e.g.*, *Castillo Torres v. Tate*, No. CV H-26-0543, 2026 WL 2455365, at *2 (S.D. Tex. Aug. 21, 2026) (quoting *Anadji v. Keisler*, Civil No. B-07-184, 2008 WL 11388565, at *6 (S.D. Tex. June 26, 2008), *report and recommendation adopted*, 2008 WL 11388548 (S.D. Tex. July 15, 2008)).

[41] *See, e.g.*, *Glushchenko*, 566 F. Supp. 3d at 711; *Vicente Rodas v. Semaia*, No. 5:26-CV-02027-PD, 2026 WL 2448316, at *4 (C.D. Cal. Aug. 20, 2026).

[42] *See Lema v. INS*, 341 F.3d 853, 857 (9th Cir. 2003) (citation modified).

[43] *See, e.g.*, Resp'ts' Status Report at 1 ("[The Government] has attempted to remove Petitioner to Mexico . . . but Petitioner refused to comply.").

Petitioner argues that his refusal to comply with removal stemmed from the Government's failure to allow him an opportunity to seek withholding of removal (to which he argues he is entitled).[44] In so arguing, Petitioner assumes that:

(1) he is entitled to seek withholding of removal before the Government removes him to Mexico; and

(2) seeking withholding of removal is not "acting to prevent his removal" for the purposes of Section 1231(a)(1)(C).

As to the first issue, this Court has previously determined that aliens are entitled to a "meaningful opportunity" to seek withholding of removal before the Government removes them to third countries.[45] As far as the record reflects, the Government still hasn't given Petitioner such an opportunity here.[46]

That leaves the issue of whether Petitioner's demand for an opportunity to seek withholding of removal is an "act to prevent his removal" within the meaning of Section 1231(a)(1)(C). Although it doesn't appear that the Fifth Circuit has squarely addressed the

---

[44] *See generally* TRO Mot. at 5.

[45] *See Pablo Pablo*, 2026 WL 2078922, at *3–7.

[46] *Compare* Order Granting Preliminary Injunction at 6 (dated June 2, 2026) (enjoining the Government from removing Petitioner without allowing him to seek withholding of removal as per 8 C.F.R. §§ 208 and 1208), *with* Resp'ts' Status Report (dated August 27, 2026) (lacking any indication that the Government has administered those procedures).

issue,[47] the Ninth Circuit has determined that Section 1231(a)(1)(C) does not authorize detention where an alien uses his available legal remedies in good faith:

> [W]e are highly skeptical about the government's suggestion that an alien's attempt to seek judicial relief from deportation constitutes "conspir[ing] or act[ing] to prevent [his] removal." We have previously held that an alien engages in such behavior when he willfully refuses to cooperate with the government in processing his deportation papers. Such acts of obstruction are clearly of a different nature than an alien's attempt to make use of legally available judicial review and remedies.[48]

This Court finds the Ninth Circuit's reasoning persuasive. Section 1231(a)(1)(C) applies where an alien's own noncooperation prevents an otherwise lawful removal.[49] Here, Petitioner has a right to a meaningful opportunity to pursue withholding of removal, and it would be unlawful for the Government to remove him without allowing him to assert that right.[50] The Court concludes that Petitioner's good-faith assertion of that right is not an "act to prevent

---

[47] In *Roach v. Holder*, a Fifth Circuit panel affirmed a district court's determination that Section 1231(a)(1)(C) authorized continued detention where an alien hampered his own removal by "fil[ing] a series of motions to reconsider or reopen his case with the BIA, all of which have been dismissed or denied." *See* 344 F. App'x 945, 946 (5th Cir. 2009). That opinion is unpublished, so it is not precedential. *See* 5TH CIR. R. 47.5. Even if it was precedential, that case is distinguishable because (at least as far as the record reflects) Petitioner hasn't raised duplicative, meritless claims for relief from removal.

[48] *Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 (9th Cir. 2008) (internal citations omitted).

[49] *See, e.g.*, *Glushchenko*, 566 F. Supp. 3d at 709 (determining that Section 1231(a)(1)(C) applied where the only thing preventing an alien's removal was his refusal to sign travel documents); *Castillo Torres*, 2026 WL 2455365, at *2 (similar).

[50] *See supra* notes 45–46 and accompanying text.

*See also, e.g.*, *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for . . . withholding of deportation to the country to which they will be deported violates both [Government] regulations and the constitutional right to due process.").

removal" within the meaning of Section 1231(a)(1)(C).[51] That provision therefore doesn't authorize Petitioner's continued detention.[52]

**2. 8 U.S.C. § 1231(a)(6) doesn't authorize Petitioner's detention**

The Court now turns to the *Zadvydas* analysis, under which the Court will assess whether 8 U.S.C. § 1231(a)(6) authorizes Petitioner's continued detention.[53]

**a. Petitioner's detention is not presumptively reasonable**

*Zadvydas* first requires the Court to determine whether Petitioner's detention is presumptively reasonable.[54] This Court previously concluded that *Zadvydas*'s six-month, presumptively reasonable detention period runs continuously from the date on which a removal

---

[51] *See, e.g.*, *Prieto-Romero*, 534 F.3d at 1060; *see also Vicente Rodas*, 2026 WL 2448316, at *4 (determining that Section 1231(a)(1)(C) didn't apply because the alien was "seeking a withholding of removal claim, which he [wa]s legally entitled to do"); *Acosta Diaz La Serna v. Mattos*, No. 2:26-CV-00238-APG-DJA, 2026 WL 2592919, at *7 (D. Nev. Sept. 2, 2026) ("[The Government] cannot rely on § 1231(a)(1)(C) to extend the removal period and deny [an alien] release until it has afforded him due process related to a third country removal.").

[52] Though the Court has concluded that the Government can't invoke Section 1231(a)(1)(C) under these circumstances, the Court also notes that there is no indication in the record that the Government served Petitioner with a Notice of Failure to Comply—as is necessary to invoke that authority. *See, e.g.*, *Khan v. Liggins*, No. 26-CV-00088-ABA, 2026 WL 2013963, at *4 (D. Md. July 10, 2026) (concluding that Section 1231(a)(1)(C) did not authorize continued detention where the Government "d[id] not allege that they have served Petitioners with any Notices of Failure to Comply under 8 C.F.R. § 241.4(g)(5), which would be required if the non-cooperation was a true impediment to removal"); *Glushchenko*, 566 F. Supp. 3d at 708 ("[W]hen DHS determines that removal needs to be extended under § 1231(a)(1)(C), it is required to serve the alien with a Notice of Failure to Comply that explains the relevant statutes and provides an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements." (citation modified)).

[53] *See supra* notes 35–37 and accompanying text.

[54] *See supra* notes 35–36 and accompanying text.

order becomes final—irrespective of whether the alien spends all or some of those six months in detention.[55]

Here, Petitioner's removal order became final on May 31, 2017,[56] meaning that his detention under Section 1231(a)(6) was presumptively reasonable through November 30, 2017. Because that period has long since passed, Petitioner's detention is not presumptively reasonable.

**b. Petitioner's removal is not foreseeable**

Having determined that Petitioner's detention isn't presumptively reasonable, the Court must now consider whether Petitioner's removal is foreseeable. As noted above, Petitioner bears the initial burden of providing good reason to believe that there is ***not*** a significant likelihood of removal in the reasonably foreseeable future.[57] While "'[g]ood reason' is not an onerous

---

[55] *See Khoury*, 2026 WL 1179822, at *7–8 (concluding that "whether detention is presumptively reasonable must depend on when the removal order becomes final—not how long an alien has spent in detention").

[56] *See* Marin Decl. at 2 (indicating that Petitioner was ordered removed on May 31, 2017); EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation/ (last visited Sep. 16, 2026) (indicating, when searching by Petitioner's A-number and nationality, that "[n]o appeal was received" in connection with Petitioner's immigration case).

*See also* 8 C.F.R. § 1241.1 (explaining how "[a]n order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final").

[57] *See supra* note 37 and accompanying text.

Some courts have concluded that where (as here) the Government re-detains an alien after revoking the alien's release, 8 C.F.R. § 241.13(i)(2) applies and places the initial burden on ***Respondents*** to show that such a likelihood of removal does exist. *See, e.g.*, *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[U]pon revocation of supervised release, it is the [Government's] burden to show a significant likelihood that the alien may be removed."); *accord Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1164 (E.D. Cal. 2025).

The Court need not resolve which burden-shifting framework applies to *Zadvydas* claims involving re-detention—even if *Zadvydas*'s burden-shifting framework (*i.e.*, the framework that is less favorable to Petitioner) applied, Petitioner's continued detention is unreasonable and not authorized by Section 1231(a)(6).

standard,"[58] it requires more than just "conclusory statements suggesting that he will not be immediately removed."[59] If Petitioner carries his burden, the burden then shifts to Respondents to rebut Petitioner's showing.[60]

***i. Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future***

Petitioner has carried his burden. He notes that "Cuba would not accept his repatriation" in 2017, and that the Government has provided no assurances, timeline, or concrete travel plans that suggest Cuba is any more viable an option nine years later.[61] He also notes that, although the Government attempted to remove him to Mexico, he was never screened for withholding of removal to Mexico (as is required where an alien claims fear of persecution or torture).[62]

Petitioner has now been detained for ***over ten months***,[63] yet there is no indication that the Government has taken the necessary steps to remove Petitioner to a third country. To secure Petitioner's removal, the Government must (among other things) give Petitioner a chance to

---

[58] *See Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026).

[59] *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006).

[60] *See supra* note 37 and accompanying text.

[61] *See* Pet. at 9; *see also* Pet'r's Reply, ECF No. 23, at 7.

*See also* Marin Decl. at 2 (indicating that Petitioner "was denied by the Government of Cuba for repatriation" on May 22, 2026).

[62] *See generally* TRO Mot.

*See also* Order Granting Petition at 10–13, *Zawu Roberts v. De Anda-Ybarra*, No. 3:26-CV-00377 (W.D. Tex. Jun. 29, 2026), ECF No. 22 (Guaderrama, J.) (concluding that removal wasn't reasonably foreseeable where the Government hadn't allowed an alien to seek withholding of removal).

[63] *See* Pet. at 9 (indicating that the Government took Petitioner into custody on November 4, 2025).

present his case for withholding of removal to an IJ.[64] The Government, however, hasn't taken that step.[65] These circumstances provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.[66]

### *ii. Respondents failed to rebut Petitioner's showing*

Respondents, for their part, offer practically nothing to rebut Petitioner's assertion that his removal isn't foreseeable.[67] In fact, Respondents actually seem to agree with Petitioner, conceding that "no viable third country has been identified or accepted by Petitioner at this time," and that "the current removal timeline is unknown."[68] And as far as the record reflects, it's been over four months since Respondents took any steps towards removing Petitioner.[69]

---

[64] *See, e.g.*, *Pablo Pablo*, 2026 WL 2078922, at *3–7.

[65] *See id.*; *see also supra* Section II.C.1.

[66] *See, e.g.*, *Torres v. Blanche*, No. 2:26-CV-00637-RFB-MDC, 2026 WL 2163550, at *5 (D. Nev. July 27, 2026) (finding that an alien met his burden under *Zadvydas* where the Government hadn't allowed the alien to seek withholding of removal to a designated third country); *Castellano v. DHS*, No. 26-CV-00080-PAB, 2026 WL 472732, at *3 (D. Colo. Feb. 19, 2026) ("Petitioner being entitled to 'notice and an opportunity to seek protection from removal' . . . further supports that his deportation is not likely in the reasonably foreseeable future." (citing cases)).

[67] *See generally* Resp't's Resp. & Mot. Dismiss, ECF No. 19; Resp'ts' Resp. TRO Mot., ECF No. 27; Resp'ts' Status Report.

[68] *See* Resp'ts' Status Report at 1; *see also* Marin Decl. at 2 ("[N]o viable third country option has been identified or accepted for the Petitioner.").

[69] *See* Marin Decl. at 2 (reflecting that Respondents most recently attempted to remove Petitioner to Mexico on May 29, 2026).

Section 1231(a)(6) doesn't authorize Respondents to detain Petitioner indefinitely while they look for a country that will accept his removal.[70] Under these circumstances, Petitioner's continued detention is unreasonable and no longer authorized by statute.[71]

**D. Scope of Relief**

Because Section 1231(a) doesn't authorize Petitioner's continued detention, the Court will order his release.[72] *Zadvydas* counsels that "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances."[73] The Court directs Respondents to release Petitioner under a form of supervised release that is consistent with 8 U.S.C. § 1231(a)(3) and corresponding regulations.[74]

---

[70] *See Zadvydas*, 533 U.S. at 689.

[71] *Id.* at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

The Court acknowledges that Petitioner has a criminal record. *See, e.g.*, Resp'ts' Resp. & Mot. Dismiss at 1 ("Petitioner had his citizenship revoked on May 3, 1999, for being a sex offender."); *see also* Notice to Appear at 3 (identifying the offenses for which Petitioner was convicted). *Zadvydas* relief, however, is not dependent on an alien's criminal history (or lack thereof). *See, e.g.*, *Zadvydas*, 533 U.S. at 684 ("Zadvydas has a long criminal record, involving drug crimes, attempted robbery, attempted burglary, and theft. He has a history of flight, from both criminal and deportation proceedings."); *id.* at 685 ("Ma [(the other alien at issue in *Zadvydas*)] was involved in a gang-related shooting, convicted of manslaughter, and sentenced to 38 months' imprisonment.").

[72] *See id.* (contemplating an alien's release where detention is no longer authorized).

[73] *Id.* at 700.

[74] *See* 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

*See also, e.g.,* 8 C.F.R. § 241.5 ("Conditions of release after removal period"); *id.* § 241.13(h) ("Conditions of release").

Respondents may continue to facilitate removal while Petitioner is released under supervision. However, Respondents may only re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i).[75]

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner Sergio Velazquez Cornero has shown by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[76]

The Court therefore **GRANTS** Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 3).

The Court thereby **ORDERS** Respondents to **RELEASE** Petitioner from immigration detention **UNDER SUPERVISION** **on or before Sunday, September 20, 2026**.

The Court **FURTHER ORDERS** that Respondents shall notify the Court of Petitioner's release **by 5:00 PM Mountain Time on Monday, September 21, 2026**.

The Court **FURTHER ORDERS** that Respondents may only re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i).

Finally, now that Petitioner has obtained the habeas relief to which he is entitled, there appears to be nothing further for the Court to do in this case. The Court therefore **CLOSES** the above-captioned case.

---

[75] *See* 8 C.F.R. § 241.4(*l*) (identifying the process by which the Government may revoke an alien's supervised release where the alien violates their conditions of release); *id.* § 241.13(i)(3) (identifying the process by which the Government may revoke an alien's supervised release to execute removal).

[76] *See supra* note 20 and accompanying text.

**So ORDERED and SIGNED this 17th day of September 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**